1  Lisa S. Kantor (SBN 110678)
    *lkantor@kantorlaw.net*
2  Timothy J. Rozelle (SBN 298332)
    *trozelle@kantorlaw.net*
3  KANTOR & KANTOR, LLP
   19839 Nordhoff Street
4  Northridge, CA 91324
   Tel: (818) 886-2525; Fax: (818) 350-6272
5
6  Attorneys for Plaintiffs, Dual Diagnosis Treatment
   Center, Inc., Satya Health of California, Inc.,
7  Adeona Healthcare, Inc., Sovereign Health of
   Phoenix, Inc., and Medical Concierge, Inc.

8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11  DUAL DIAGNOSIS TREATMENT        )   Case No.:  2:22-cv-00333 RGK (PDx)
    CENTER, INC., a California corporation, )
12  d/b/a Sovereign Health of California;  )   [Hon. Gary R. Klausner]
    SHREYA HEALTH of CALIFORNIA INC; )
13  MEDICAL CONCIERGE, INC. d/b/a     )   **FIRST AMENDED COMPLAINT**
    Medlink; SATYA HEALTH OF         )   **FOR**
14  CALIFORNIA, INC.; SOVEREIGN      )
    HEALTH OF PHOENIX, INC.; SHREYA  )   **1.    BREACH OF CONTRACT**
15  HEALTH OF ARIZONA, INC.; ADEONA  )
    HEALTHCARE, INC.; VEDANTA        )   **2.    PROMISSORY ESTOPPEL**
16  LABORATORIES, INC.,              )
                                     )   **3.    UNFAIR BUSINESS**
17                 Plaintiffs,       )          **PRACTICES**
                                     )
18            vs.                    )   **4.    BREACH OF THE**
                                     )          **COVENANT OF GOOD**
19  CALIFORNIA PHYSICIANS' SERVICES, )          **FAITH AND FAIR**
    INC., d.b.a. BLUE SHIELD OF      )          **DEALING**
20  CALIFORNIA, a California Corporation; )
    BLUE SHIELD OF CALIFORNIA LIFE & )
21  HEALTH INSURANCE COMPANY, a      )
    California Corporation; and DOES 1 )   **DEMAND FOR JURY TRIAL**
22  through 25, inclusive; CHILDREN'S )
    PRIMARY DENTAL GROUP HEALTH      )
23  BENEFIT PLAN; LIVING FITNESS     )
    HEALTH BENEFIT PLAN; V. PAUL     )
24  KATER, M.D. HELATH BENEFIT PLAN; )
    TRINET EMPLOYEE BENEFIT          )
25  INSURANCE PLAN,                  )
                                     )
26                                   )
                 Defendants.         )
27  _____ )

28

_____

                    FIRST AMENDED COMPLAINT

1    Plaintiffs Dual Diagnosis Treatment Center, Inc. d/b/a Sovereign Health of

2  California ("Dual Diagnosis"); Shreya Health of California, Inc. ("Shreya"); Medical

3  Concierge, Inc. d/b/a Medlink ("Medlink"); Satya Health of California, Inc. ("Satya");

4  Sovereign Health of Phoenix, Inc.; Shreya Health of Arizona, Inc.; Adeona Healthcare,

5  Inc. ("Adeona") and Vedanta Laboratories, Inc. ("Vedanta") (collectively referred to as

6  the "Plaintiffs" or "Sovereign") files this First Amended Complaint against Defendant

7  California Physicians' Services, Inc., doing business as Blue Shield of California, Blue

8  Shield of California Life & Health Insurance Company (collectively, "Defendants" or

9  "Blue Shield Defendants") as follows:

## INTRODUCTION

10

11    1.    Defendants are California corporations that issue health insurance policies

12  and health care service plan contracts throughout the State of California, and are

13  authorized to and are conducting business in all counties in the State of California,

14  including the County of Los Angeles.

15    2.    The true names and capacities, whether individual, corporate, associate, or

16  otherwise, of Defendants sued herein as DOES 1 to 25, inclusive, are currently

17  unknown to plaintiff, who therefore sues Defendants by such fictitious names under

18  Code of Civil Procedure §474. Plaintiffs are informed and believe, and based thereon

19  allege, that each of the Defendants designated herein as a DOE is legally responsible in

20  some manner for the unlawful acts referred to herein. Plaintiffs will amend this

21  Complaint to reflect the true names and capacities of the Defendants designated

22  hereinafter as DOES when such identities become known.

23    3.    The several plaintiffs in this action treat individuals suffering from drug

24  addiction and/or mental health problems. As a matter of practice, Plaintiffs obtain

25  assignments from their patients.

26    4.    Plaintiffs bring this suit to enforce their valid assignments of benefits and

27  to enforce their contractual rights against Defendants under state law.

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

FIRST AMENDED COMPLAINT

5.     In a nutshell, the Blue Shield Defendants did everything they could to undermine Plaintiffs' ability to operate as independent, out-of-network ("OON") providers. Specifically, Blue Shield engaged in the following improper conduct, all of which is prohibited by California state law:

a)      mislead Plaintiffs about whether claims are assignable under the governing insurance policies, and then later, with no explanation, refused to pay Plaintiffs and instead paid some unknown amount to the recovering patient-addicts themselves,

b)      refused to honor assignments even when the underlying insurance policies permitted them, and

c)      never plainly told its members or beneficiaries that the assignments they choose to give would not be honored.

6.     This scheme of deception and confusion leaves OON providers like the Plaintiffs misled, confused, and often holding the bag for services rendered in good faith to suffering patients—all of which unfairly increased the cost of running their businesses.

7.     Defendants do not even attempt to hide this conduct. "Payments for services rendered by providers who do not contract with [insurance companies like Blue Shield of Blue Cross entities] are sent directly to our customers. Thus, out-of-network providers face the inconvenience of attempting to collect payment from the customer and the accompanying possibility of incurring bad debts." See Blue Perspective: BCBSOK Position on Legislation and Regulatory Issues, Blue Shield Blue Shield Oklahoma, www.bcbsok.com/grassroots/pdf/blueperspective_aob27-103003.pdf (last visited October 27, 2020).

8.     Cutting providers out of the process also saves Defendants money by leaving to unsophisticated patients (i.e., recovering addicts) the responsibility of ensuring that the insurance policies have fully paid the patients' benefit entitlements.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

3

FIRST AMENDED COMPLAINT

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

## JURISDICTION AND VENUE

9.      Federal jurisdiction is not proper in this matter because all claims brought in this matter are state law claims. Jurisdiction in state court would be proper under Section 410.1 of the California Code of Civil Procedure and Article 4 of the California Constitution.

10.     This venue is not proper in this matter because all claims brought in this matter are state law claims. Venue would be proper in Los Angeles Superior Court - Complex Court where this matter was originally filed. Venue would be proper in state court under Section 395.5 of the California Code of Civil Procedure because the principal place of business of the defendants (or some of them) is located in the County of Los Angeles.  Further, much of the conduct that is the subject of this lawsuit occurred within this County, including the providing of insurance coverage under the covered policies, and the Defendant conducts business within this County, either directly or through wholly owned and controlled subsidiaries.

## PARTIES TO THIS ACTION

### A.    PLAINTIFFS

11.     Plaintiffs are entities that provided in- and out-patient substance abuse and/or mental health treatment in California, Arizona, and other locations.

12.     Dual Diagnosis Treatment Center, Inc. d/b/a Sovereign Health of California ("Dual Diagnosis") is a corporation duly organized and existing under the laws of California. At all relevant times, Dual Diagnosis did business as "Sovereign Health of California," and on occasion under other names in accordance with its governing certifications and licensures. At all relevant times, Dual Diagnosis was certified to operate and maintain behavioral health treatment facilities in San Clemente, Culver City and Palm Springs California, among other locations.

13.     Medical Concierge, Inc. ("Medlink") is a corporation duly organized and existing under the laws of California, doing business as "Medlink." Medlink is licensed

4

FIRST AMENDED COMPLAINT

to operate and maintain an adult residential facility ("ARF") for ambulatory mentally ill adults.

14.     Satya Health of California, Inc. ("Satya") is a corporation duly organized and existing under the laws of California. At all relevant times, Satya did business as "Sovereign by the Sea II," and on occasion under other names in accordance with its governing certifications and licensures. At all relevant times, Satya was licensed to operate and maintain behavioral health treatment facilities in San Clemente, Culver City, and Palm Springs, California, among other locations.

15.     Shreya Health of California, Inc. ("Shreya") is a corporation duly organized and existing under the laws of California. At all relevant times, Shreya operated as a facility that provided 24 hour therapeutically planned living and rehabilitative environment for treatment of individuals with behavioral and other disorders. Shreya operated a treatment facility in San Clemente, California, among other locations.

16.     Sovereign Health of Phoenix, Inc. is a corporation duly organized and existing under the laws of Delaware, doing business as "Sovereign Health of Phoenix." At all relevant times, Sovereign Phoenix is licensed to operate and maintain a behavioral health residential facility in Chandler, Arizona.

17.     Shreya Health of Arizona, Inc. ("Shreya AZ") is an Arizona corporation. Its principal place of business is in Chandler, Arizona and Shreya AZ specializes in clinic/center care for rehabilitation and treating patients with substance abuse disorders.

18.     Vedanta Laboratories, Inc. ("Vedanta") is a corporation that was duly organized under the laws of the Delaware. At all relevant times, Vedanta provides toxicology testing and quality assurance programs. Vedanta serves clinicians and healthcare facilities.

**B.     FORMER PATIENTS**

19.     This lawsuit involves behavioral health treatment services rendered by Plaintiffs to many individuals ("Former Patients") who Plaintiffs are informed and

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

FIRST AMENDED COMPLAINT

1   believe, at all relevant times, possessed health insurance covering some or all of the

2   services that Plaintiffs provided.

3       20.    To protect their personal health information, the Former Patients are

4   identified by their initials in **Exhibit A** to this complaint. The Former Patients who had

5   health insurance provided by the California health insurance marketplace are listed on

6   **Exhibit A** to this complaint, incorporated herein by reference.[1]

7       **C.**    **<u>DEFENDANTS</u>**

8       21.    Plaintiffs are informed and believe, and thereon allege, that Defendant

9   California Physicians' Services, Inc., d.b.a. Blue Shield of California ("Blue Shield"),

10  is, and at all relevant times was, a California corporation qualified to do business in the

11  State of California, with its principal place of business in San Francisco, California.

12  Blue Shield of California is an independent member of the Blue Shield Association, and

13  is a health care service plan pursuant to the Knox-Keene Act, California Health &

14  Safety Code Section 1340 *et seq.*

15      22.    Plaintiffs are informed and believe, and thereon allege, that Defendant

16  Blue Shield of California Life & Health Insurance Company ("Blue Shield L&H") is,

17  and at all relevant times was, a California corporation qualified to do business in the

18  State of California, with its principal place of business in San Francisco, California.

19  Defendant is a health insurance company licensed by the California Department of

20  Insurance.

21      23.    The true names and capacities of the Defendants named herein as Does 1

22  through 25, inclusive, whether individual, corporate, associate, or otherwise, are

23  currently unknown to Plaintiffs, and therefore Plaintiffs allege that each of these

24  fictitiously named Defendants is responsible in some manner for the events sued upon.

25  Plaintiffs will seek leave of this Court to amend the Complaint to assert the true

26

27  _____

28  [1] Defendants will be provided specific information as to each Former Patient, so that it can identify the patient and appropriately provide the administrative record in this action.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1  identities and capacities of the Defendants named herein as Does 1 through 25,

2  inclusive, when such identities and capacities have been ascertained.

3       24.    Plaintiffs are informed and believe, and thereon allege, that each and every

4  Defendant, named or "doe'd in," was acting as the agent, employee or delegee of each

5  other defendant, and in doing the things alleged in this action, was acting within the

6  scope of that agency, employment or delegation, and with the permission and consent of

7  each of the other Defendants.

8       25.    Based upon documents obtained by Plaintiffs to date, Plaintiffs are

9  informed and believe that the health insurance of each of the Former Patients referenced

10 in the attached **Exhibit A** was obtained through the California health insurance

11 marketplace.

12

13                      **ADDITIONAL FACTUAL BACKGROUND**

14 **A.    Plaintiffs Provide Gold Standard Treatment Services**

15      26.    Plaintiffs are leading providers of comprehensive addiction and mental

16 health treatment programs and other services to individuals in various locations across

17 the United States.

18      27.    It is widely accepted that the services rendered by Plaintiffs and similar

19 providers are extremely important. For example, according to the National Institute on

20 Drug Abuse, every $1 spent on substance abuse treatment saves $4.87 in health care

21 costs and $7.00 in crime costs. See Nat'l Inst. on Drug Abuse, Principles of Drug

22 Addiction Treatment: A Research-Based Guide (3d ed. 1999).

23      28.    Plaintiffs' approach to addiction and other mental health treatment was

24 consistent with best practices in the industry. Plaintiffs' proven track record also earned

25 Plaintiffs accolades from trade and government groups. Dual Diagnosis, for example,

26 received the Gold Seal of Approval from the Joint Commission, an independent not-for-

27 profit organization that is the nation's oldest and largest standards-setting and

28 accrediting body in health care. And the California Board of Behavioral Health

Sciences, the California Association for Alcohol/Drug Educators, and the National Association for Alcoholism and Drug Abuse Counsels approved Plaintiffs' entities to provide continuing education to licensed professionals.

29.     Medlink, a fully furnished and licensed adult residential facility ("ARF"), contracts for Plaintiffs to provide extensive non-medical and administrative services to Medlink and its patients. By partnering with Plaintiffs, Medlink is able to deliver high-quality services to individuals whose illnesses necessitate admission into an ARF.

### B.     Plaintiffs Are Out-of-Network Providers

30.     Health care providers are either "in-network" or "out-of-network" with respect to insurance carriers. "In-network" providers are those who contract with health insurers to accept payments in full at rates discounted from their usual and customary charges for covered services in exchange for such insurers steering patients to their facilities and thereby increasing the providers' volume. "Out-of-network" providers are those that do not have contracts with insurance carriers to accept discounted rates from their usual and customary charges. Sovereign was an out-of-network provider.

31.     Under the applicable Blue Shield policies, Blue Shield was required to promptly pay benefits for out-of-network services to Sovereign based on rates provided in the plans or policies. Depending on the specific Blue Shield policy, those rates include:

- Some version of the reasonable and customary rate.
- A percentage of Medicare rates, which varies by policy.
- Other rate(s) as otherwise defined in the applicable policies.

32.     Often times, Blue Shield's policies require it to reimburse out-of-network providers at the "lower of: (a) the provider's billed charge, or (b) the amount determined by Blue Shield to be the reasonable and customary value for the services rendered by a Non- Participating Provider based on statistical information that is updated at least annually and considers many factors including, but not limited to,

the provider's training and experience, and the geographic area where the services are rendered."

33.     The Blue Shield Defendants charged their insureds higher premiums for the inclusion of "out-of-network" benefits in their respective policies. Insureds may choose an out-of-network provider for a variety of reasons, such as the quality of care and amenities available at a particular facility or access to a specific doctor, as is the patient-beneficiary's choice under the Blue Shield policies. Despite the foregoing, and despite Plaintiffs' out-of-network status, the Blue Shield Defendants' insureds frequently sought treatment at Sovereign.

**C.     Plaintiffs Obtain Valid Benefit Assignments from Each Former Patient**

34.     Upon registration at Sovereign, all patients, including Blue Shield Defendants' insureds, executed an assignment of claims/benefits form, among other documents. In the Assignment, Blue Shield Defendants' insureds irrevocably and fully assigned to Sovereign their rights to benefits, claims, and causes of action under the Blue Shield Defendants' policies.

35.     Here, the broad language of the assignments clearly manifests an intent by the Former Patients to assign all their rights arising from the insurance contract related to the treatment provided by Sovereign. The Assignments provide in pertinent part:

I, Policyholder, irrevocably assign, transfer and convey to Provider the *exclusive rights to my benefits, insurance proceeds or other monies otherwise due to me for services rendered by Provider ("Benefits") from my insurer*, employee benefit plan, welfare benefit plan, government plan, tortfeasor or other liable third party ("Liable Third Parties"), and *all administrative, arbitral, judicial or other rights* I may have relating to the recovery of Benefits from Liable Third Parties, including but not limited to, my rights to: 3. *Obtain legal and equitable remedies, including, without limitation, damages, penalties*, . . . . and 7. *[r]ecover*

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

*attorneys' fees and court costs* . . . incurred in connection with any proceeding relating to the enforcement or defense of the rights assigned.

36.     As a result of this assignment, Plaintiffs had the same rights the Former Patients had under applicable insurance contracts.

37.     Plaintiffs (or their agents, on Plaintiffs' behalf) obtained a valid assignment of benefits ("Assignment") from all patients before treating them.

38.     The Assignments give Plaintiffs the right to be paid directly for any services rendered to patients, and also entitle Plaintiffs to assert patients' legal rights to recover benefits. These legal rights include the right to file claims and appeals, to request and obtain information and documents relating to the plan, and to bring suit.

39.     The Assignments entitle Plaintiffs to collect payment for services provided to the Former Patients directly from the Blue Shield Defendants.

40.     The Assignments also confer legal standing on Plaintiffs to assert various legal claims against the Blue Shield Defendants, including the claims in this Complaint.

41.     Upon information and belief, most of the Blue Shield Defendants did not prohibit their insureds from assigning their rights to benefits under the Blue Shield plans or policies, including the right of direct payment of benefits under the plans or policies to Sovereign.

42.     Moreover, to the extent that any of the Blue Shield Defendants prohibited the assignment of benefits to Sovereign, Defendants have waived any purported anti-assignment provisions, have ratified the assignment of benefits to Sovereign, and/or are estopped from using any purported anti-assignment provisions against Sovereign due to their course of dealing with and statements to Sovereign as an out-of-network provider. Through the verification process and claim submission (which included a written disclosure of an assignment) the Blue Shield Defendants were aware that their insureds had executed valid assignments in favor of Sovereign and the Blue Shield Defendants have not raised any anti-assignment concerns.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

FIRST AMENDED COMPLAINT

### D.   Plaintiffs Verify Patients' Insurance Coverage

43.     In addition to receipt of the Assignment, before admitting a patient, Sovereign would contact Defendants by telephone to verify the patient's benefits: that he/she had insurance, that the insurance policy at issue provided for out-of-network benefits, whether there were limitations or exclusions applicable, and what the patient deductible, out-of-pocket maximum, and coinsurance were. Sovereign would also ask how the Blue Shield Defendants covering the insureds at issue determined the out-of-network benefits for the procedure(s) at issue.

44.     Plaintiffs, who during all relevant times were for-profit enterprises, allow prospective patients to pay for their services out-of-pocket or with health insurance. Unfortunately, many individuals in need of treatment cannot afford to pay for Plaintiffs' services up front. Plaintiffs are only able to treat those individuals who have health insurance covering some or all of their services.

45.     Before agreeing to treat any patient, Plaintiffs take steps to ensure that they will be compensated for their services. When a prospective patient seeks to pay with his or her health insurance, Plaintiffs investigate whether and to what extent the patient's insurance policy covers their various levels of service.

46.     When each Former Patient first sought treatment, as a matter of intended general practice described below, Plaintiffs or their agents verified that he or she was insured and ascertained the scope of his or her coverage through various procedures.

47.     Plaintiffs or its agents first secured the Former Patient's consent to contact his or her health insurance company, along with the identifying information necessary for Plaintiffs to interact with the insurer.

48.     Plaintiffs or their agents also asked for the dedicated phone number of healthcare providers associated with the Former Patient's insurance policy ("Provider Hotline").

49.     Plaintiffs are informed and believe that each Former Patient authorized Plaintiffs to contact the Provider Hotline of a Blue Shield Defendant. Plaintiffs or their

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

11

FIRST AMENDED COMPLAINT

agents generally recorded this information in the top box of a comprehensive document entitled "Insurance Verification Form."

50.     Plaintiffs or their agents called the Provider Hotline listed on the Insurance Verification Form on each Former Patient's behalf. When it reached a Blue Shield Defendant, Plaintiffs or their agents relayed the Former Patient's identifying information and requested details about his or her coverage. Plaintiffs or their agents generally, but not always, recorded the information learned from the Blue Shield Defendant on the bottom of the Insurance Verification Form.

51.     To attempt to complete Plaintiffs' Insurance Verification Form, Plaintiffs or their agents generally inquired exhaustively into the characteristics of the Former Patient's health insurance coverage, including with respect to:

a)     The general characteristics of the health insurance policy (including fields for effective date and renewal date, the type of plan, and whether it covers preexisting conditions, among other things);

b)     The existence and scope of any substance abuse or mental health coverage (including fields regarding deductible for in-network and out-of- network services and maximum out-of-pocket payments for in-network and out- of-network services, among other things);

c)     Any precertification requirements (including fields indicating whether precertification required for inpatient treatment, residential treatment, partial hospitalization, intensive outpatient treatment, and/or outpatient treatment by in-network and out-of-network providers); and

d)     Copayments for each type of treatment and any limits on the length of treatment.

52.     Plaintiffs or their agents generally also investigated the logistics of securing authorization and payment for Plaintiffs' services, including:

a)     How to comply with precertification requirements (including fields for pre-certification company and telephone number);

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

b)     The name of the insurance company and the entity to which benefit claims should be submitted (including fields for insurance company and claims address); and

c)     Whether the Former Patient's health insurance benefits were assignable. The answer to this question was supposed to be recorded by circling "Yes" or "No" (or "Y" or "N") next to the word "assignable" on the Insurance Verification Form.

53.     After the insurance verification process, Plaintiffs then contacted each Former Patient to discuss his or her insurance policy and to make appropriate arrangements for treatment.

**E.     Each Former Patient Had "Preferred Provider Organization" Coverage for Substance Abuse and Mental Health Treatment Services**

54.     Plaintiffs only wished to provide services that prospective patients could afford. As such, as a matter of course, Plaintiffs investigated whether the treatment needed by a patient (including the Former Patients) was covered by insurance.

55.     When Plaintiffs or their agents called the Blue Shield Defendants' Provider Hotlines, they learned that each Former Patient's health insurance policy had at least the following key features: (1) coverage for substance abuse/mental health treatment offered by Plaintiffs, and (2) preferred provider organization ("PPO") coverage.

56.     A PPO policy covers medical expenses incurred when the insured visits either an "in-network" provider (i.e., a provider who has a contractual relationship with the insurance company) or an "out-of-network" provider (i.e., one who does not have a contractual relationship with the insurance company).

57.     PPO coverage tends to be significantly more expensive than health maintenance organization ("HMO") coverage because it gives insureds the option to visit the providers of their choice. Many insureds are nevertheless willing to pay a premium for PPO coverage to gain access to a bigger and better pool of providers.

58.     No law required the Blue Shield Defendants to offer PPO coverage instead of HMO coverage. The PPO policies offer more robust and expensive insurance to

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

13

insureds, and each Former Patient or subscriber enrolled in and paid for that premium level of coverage.

59. Plaintiffs are out-of-network with respect to all Blue Shield Defendants. In other words, Plaintiffs are not contracted with any Blue Shield Defendant to provide services to their insureds at a discounted rate.

60. In short, Plaintiffs and their agents learned from the Blue Shield Defendants that each Former Patient had PPO coverage for substance abuse and mental health treatments and services, and that the Blue Shield Defendants were the relevant insurance companies, administrators, and contacts for those plans.

### F. After Providing Covered Services, Plaintiffs Submitted Claims for Benefits to the Blue Shield Defendants Following Blue Shield Procedures

61. Plaintiffs provided medically necessary substance use and behavioral health treatment services to the Former Patients that were covered by their policies.

62. Plaintiffs then sought payment by submitting the appropriate documents to the appropriate Defendants in accordance with Blue Shield's procedures. These claims for payment notified the Defendants that Plaintiffs had obtained valid Assignments from the Former Patients and asserted Plaintiffs' right to receive any benefits owed to the Former Patients under the terms of their health insurance policies.

63. Plaintiffs are informed and believe that the insurance cards that the Defendants issued to the Former Patients instructed health providers to communicate with and submit claims directly to Blue Shield. Plaintiffs are informed and believe that the Defendants on the Provider Hotline likewise instructed Plaintiffs or their agents to submit claims to the Blue Shield Defendants for the territory in which Plaintiffs are located. Blue Shield was listed on the Insurance Verification Form.

64. Plaintiffs complied with these procedures by submitting claims for payment directly to the Blue Shield Defendants.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

FIRST AMENDED COMPLAINT

65.     Plaintiffs are informed and believe that the Blue Shield processes claims and finalizes and pays the claim. Blue Shield then remits payment.

66.     Plaintiffs or their agent timely submitted claims for payment to Blue Shield using industry standard UB-04 forms.

67.     UB forms are promulgated by the National Uniform Billing Committee ("NUBC"), an organization formed in 1975 "to develop and maintain a single billing form and standard data to be used nationwide by institutional, private and public providers and payers for handling health care claims."

68.     The UB-04 form includes information sufficient to allow insurance companies to identify, process, and pay claims. For example, it contains fields for the service provided, the appropriate code for that service, and the charge for the service that the provider believes is usual and customary. The UB-04 form also includes a field ("ASG BEN" in field 53) in which the provider indicates whether it has received an assignment of health care claims from the patient.

69.     Each UB-04 form submitted in connection with services that Plaintiffs provided to each Former Patient indicated that Plaintiffs had received an assignment of health care claims from the Former Patient.

70.     After the verification of benefits, Defendants (or their agents) repeatedly continued to interact with Plaintiffs (or their agents) with respect to the Former Patients and claims for whom Plaintiffs received assignments. In addition to verification of services, such interaction, which was over a long period of time, included receiving and processing UB-04 claim forms for payment for the services, communicating with Plaintiffs (or their agents) about the services and claims, and requesting additional documentation for the claims.

///

///

FIRST AMENDED COMPLAINT

**G.** **The Blue Shield Defendants Approved Plaintiffs Claims but Arbitrarily Disregarded Their Assignments and/or Significantly Underpaid Claims**

71. During this continued interaction neither the Defendants nor their agents notified Plaintiffs or their agents that Defendants would not honor any assignment of benefits. Nor did they refuse to deal directly with Plaintiffs or their agents with respect to the claims of the Former Patients. Indeed, Defendants (or their agents) regularly informed Plaintiffs' agents through express words in many cases, but at a minimum impliedly through their actions, that the claims of Former Patients at issue were freely assignable.

72. A valid assignment obligates the debtor to pay the assignee, not the original creditor.

73. When there is a valid assignment in place, performance under a contract runs to the assignee. Thus, when a creditor assigns its interest in an existing debt owed to it, the debtor must generally pay the debt to the assignee, not the original creditor. Indeed, after a debtor has received notice of a valid assignment, or obtained knowledge of it in any manner, assignor or any person other than the assignee is at the debtor's peril and does not to the assignee.

74. Plaintiffs are informed and believe that the Defendants approved and authorized payment on Plaintiffs' claims for benefits in connection with the services provided to the Former Patients but did not pay Plaintiffs (apparently on the grounds that Plaintiffs were assignees). In other words, despite Defendants being informed of and provided with written notice that Plaintiffs were assignees— and despite Defendants approving the underlying claim for covered services—the Defendants mailed checks directly to the Former Patients and not to Plaintiffs.

75. Plaintiffs are informed and believe that the Defendants' disregard of Plaintiffs' Assignments is consistent with Blue Shield's systematic practice of disregarding the assignments of out-of-network providers like Plaintiffs.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

76.     Indeed, when Plaintiffs sought payment for covered claims the Former Patients had assigned to it, Blue Shield uniformly refused to pay, or even to acknowledge, Plaintiffs' benefit claims. Neither Plaintiffs' initial UB-04 requests for payment nor its follow-up letters resulted in payment.

77.     In this litigation, the Defendants' policy of misleading Plaintiffs on the assignability of claims and/or disregarding assignments to out-of- network providers like Plaintiffs led them to send large sums of money to chemically dependent individuals. That practice was patently reckless with respect to the health and safety of the Former Patients, as well as the health and safety of the general public. It also all but guaranteed that Plaintiffs would receive only a fraction of what it was owed for their services.

78.     In addition to disregarding the assignments of various patients, the Defendants paid only a fraction of the usual and customary fees for the treatment services at issue in this litigation.

79.     Even considering the amounts that the Defendants may contend are the patients' responsibility, the payments made by the Blue Shield Defendants are still woefully inadequate and well below the usual and customary charges.  In fact, there are still hundreds of thousands of dollars due and owing from the Defendants.

80.     In violation of their duties under California state law, the Blue Shield Defendants failed and refused to:  (i) pay plaintiffs for the health care services provided to the patients who are covered by various Blue Shield policies; (ii) failed and refused to provide full and fair review of the plaintiffs charges; and (iii) failed and refused to provide a meaningful review process.

81.     Because of the Blue Shield Defendant's actions, Plaintiffs have been paid substantially less than they should have been for the services provided.

82.     Attached hereto as **Exhibit A** is a chart listing all the Former Patients whose claims Plaintiffs are being pursuing in this litigation. **Exhibit A** also includes, for each Former Patient, the Patient's identifying initials, provider, amount billed by

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

provider, amount paid by Defendants to the Patient and the amount the provider was actually able to collect from the Patient.

### H. Defendants Drastically Underpaid Sovereign's Claims for Reimbursement

83. Sovereign treated 36 Blue Shield insureds subject to this lawsuit at Sovereign facilities and accordingly billed Defendants for the mental health and substance use treatment services provided to these insureds. Sovereign's total charges for these claims was an amount to be determined at the time of trial, reflecting the usual and customary fees for the particular services provided at Sovereign.

84. However, to date, Defendants have reimbursed Sovereign for only a small fraction of this amount to be determined at the time of trial. Even factoring in amounts that Defendants contend are the patients' responsibility under the applicable Blue Shield policies (i.e., the insured's co-payments, coinsurance, and deductibles), the total payments made by Defendants are a mere fraction of the total usual and customary charges—leaving an unpaid balance to be determined at the time of trial on these claims.

85. Attached hereto as **Exhibit** A is a summary of the claims as issue in this lawsuit broken down by each Former Patient. **Exhibit A** is incorporated herein for all purposes. The summary provides the aggregate amount of charges, insurance payments and the amount Sovereign was able to collect from the patients whose claims are at issue.

### I. Defendants Misconduct Violates Their Statutory and Regulatory Duties

86. California common and statutory law requires that health insurers handle submitted claims carefully, promptly, transparently and in good faith. See e.g. Cal. Health & Safety Code Sec. 1371 (providing for a 30 day time limit to either pay a claim or contest a claim and seek more information but requiring that "the notice that a claim is being contested shall identify the portion of the claim that is contested and the

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

specific reasons for contesting the claim;" Cal Ins. Code Sec. 10123.13(a); Cal. Health & Safety Code Sec. 1363.5 ("A plan shall disclose. . . the process the plan. . . uses to authorize, modify or deny health care services under the benefits provided by the plan"); Cal Ins. Code Secs. 1023.137(a), (b); Cal. Code Reg. Sec. 1300.77.4 ("Every plan shall institute procedures whereby claim forms received by the plan from providers of health care services for reimbursement on a fee-for-fee service basis. . . are maintained and accounted for in a manner which permits the determination of the date of receipt of any claim, the status of any claim, the dollar amount of unpaid claims at any time, and rapid retrieval of any claim"); 10 Cal. Code Reg. Sec. 2695.3. Nor may any insurer rescind or modify its authorization for treatment "after the provider renders the health care service in good faith and pursuant to the authorization." Cal. Health & Safety Code Sec. 1371.8; accord Cal. Ins. Code Sec. 796.04.

87.     These rules (and similar rules in other states) seek to ensure that any denial or partial payment of a submitted claim is based on a genuine analysis of the facts and of the underlying terms of the insurance policy.

88.     Here, Defendants failed to follow the codes and regulations, repeatedly and willfully failing to provide Plaintiffs with timely, specific, good faith explanations of their refusal to fully reimburse Plaintiffs for services rendered to any Former Patient, as required by their legal obligations. For each claim that Plaintiffs submitted to Defendants in connection with treating the Former Patients, Defendants paid the claims at severely discounted rates without any meaningful or legally permissible justification. Cf. Cal. Health & Safety Code Sec. 1371.37 (prohibiting "unfair payment patterns by health insurers, where unfair payment pattern includes (1) engaging in a demonstrable and unjust pattern, as defined by the department of reducing the amount of payment or denying complete and accurate claims.

89.     By way of example and not limitation, it was not unusual for Plaintiffs to bill for services that exceeded several thousand dollars to be paid by Defendants less than $100 for those billed services—all without explanation or justification, as required.

90.    Plaintiffs seek relief for all the claims they submitted to Defendants for these Former Patients.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (Against Blue Shield Defendants)

109.   Plaintiffs repeat the allegations contained in each of the preceding paragraphs of this Complaint.

110.   Under California law, a cause of action for breach of contract requires "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages. The breach of contract law in other states is in accord.

111.   Plaintiffs treated numerous patients, including those listed on the attached **Exhibit A**.

112.   After confirming with defendants that these approximately 36 patients were covered under Defendants' policies, Plaintiffs obtained an assignment from each Former Patient.

113.   As assignees of the claims of these approximately 36 patients, Plaintiffs are entitled to reimbursement for the services rendered based on the existence and terms of the insurance policies that covered these 36 patients.

114.   In the alternative, Plaintiffs are express and intended beneficiaries of the subject insurance contracts and are entitled to recover on that basis as well. "For purposes of determining whether a third party is an intended beneficiary, the relevant intent is that of the promise, and it is sufficient if the promisor understood that the promise had the intent." *Serv. Emps. Int'l Union, Local 99 v. Options – A Child Care & Human Servs. Agency*, 200 Cal. App. 4th 869, 879 (2011).

115.   Individuals pay more for PPO policies precisely so they can seek treatment from out-of-network providers and for the certainty that their insurer will reimburse that provider for the treatment. The terms of these 36 Former Patients' policies reflect that

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

bargain and the intent that out-of-network providers, like the Plaintiffs will be paid by Defendants for rendering services.

116.   As alleged above, before rendering services, Plaintiffs confirmed that each of these 36 Former Patients was covered by a policy issued by Defendants. At great cost to themselves, Plaintiffs then rendered medically necessary substance abuse and/or mental health treatment services and toxicology testing services to the 36 Former Patients.

117.   After rendering those services, Plaintiffs submitted the appropriate claims forms to Defendants or their agents, seeking compensation for the care and treatment they provided to these 36 patients.

118.   Plaintiffs did not receive full or reasonable – or in some cases any – compensation for the services they provided; indeed, on numerous occasions Defendants paid only pennies on the dollar for the Plaintiffs services.

119.   Plaintiffs are informed and believe that there are no legally operative terms within the policies governing the 36 Former Patients that entitled Defendants to deny Plaintiffs the full and/or reasonable compensation for the services they rendered to the 36 Former Patients in good faith.  Plaintiffs duly performed covered services under the various insurance contracts and are entitled to be paid.

120.   Defendants are also equitably estopped from denying coverage and/or asserting any newly minted defense to payment that were not set forth, in writing, at the appropriate time int eh claims process. See e.g., *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 488 (2008) ("In the insurance context especially, estoppel may arise from a variety of circumstances in which the insurer's conduct threatens to unfairly impose a forfeiture of benefits upon the insured.")  Equitable estoppel occurs when "(1) the party to be estopped has engaged in blameworthy or inequitable conduct; (2) that conduct caused or induced the other party to suffer some disadvantage; and (3)

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

equitable considerations warrant the conclusion that the first party should not be permitted to exploit the disadvantage he has thus inflicted upon the second party" *Id.*[2]

121.   Defendants repeatedly and willfully violated the relevant claims handling obligations imposed by the laws identified above, by failing to provide Plaintiffs with timely, specific, good faith explanations of their refusal to fully reimburse Plaintiffs for services rendered to the 36 Former Patients.  Those regulatory violations provide a well-recognized basis for estoppel, particularly in the insurance context. See e.g. *Zembsch v. Superior Court*, 146 Cal. App. 4th 153, 168 (2006) (holding that a violation of the Knox-Keene Act "renders an arbitration agreement unenforceable"); *Spray, Gould & Bowers v. Assoc. Int'l Ins. Co.*, 71 Cal. App. 4th 1260, 1268-74 (1999).

122.   Defendants also waived any new defenses by not asserting them at the appropriate times.

123.   Defendants are in breach of the relevant insurance policies and have damaged Plaintiffs by refusing to pay the amounts required under those insurance policies.

124.   Plaintiffs are entitled to compensatory damages equal to the value of their services plus interest and costs.

**SECOND CLAIM FOR RELIEF**
**PROMISSORY ESTOPPEL**
**(Against Blue Shield Defendants)**

125.   Plaintiffs repeat the allegations contained in each of the preceding paragraphs of this Complaint.

126.   Promissory Estoppel is an equitable doctrine whereby "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does induce such action or forbearance is binding if

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

---

[2] Although equitable estoppel is not an independent cause of action under California law, it can be pleaded "as a part of the cause of action." *Moncada v. W. Coast Quarts Corp.*, 221 Cal. App. 4th 768, 782 (2013).

injustice can be avoided only be enforcement of the promise." *Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal. App. 4th 305, 310 (2000). The elements are: (1) a promise, (2) the reasonable expectation by the promisor that the promise will induce reliance or forbearances, (3) actual reliance or forbearance, and (f) avoidance of injustice by enforcing the promise. *Fleet v. Bank of Am. 22 N.A.*, 229 Cal. App. 4th 1403, 1412 (2014).

127.    The facts here readily satisfy those elements. The series of communications between Plaintiffs and Defendants evinced a clear promise that Defendants would pay Plaintiffs for Plaintiffs' expert treatment of the Former Patients, and in reliance on Defendants' representations, Plaintiffs expended substantial resources providing treatment.

128.    Further, Plaintiffs' reliance on Defendants' representation was not merely foreseeable, it was precisely what Defendants hoped would happen as part of their unlawful scheme. Plaintiffs' reliance on Defendants affirming pattern of conduct was also eminently reasonable, especially in light of industry custom and the parties' past interactions. Providers like Plaintiffs routinely contact Defendants to verify that prospective patients have coverage for their services and that Defendants agree that the patients require those services. Providers then react to positive confirmation by providing the covered medically necessary treatment.

129.    The parties conduct must also be viewed against the backdrop of the comprehensive regulatory scheme. As discussed, insurers must handle claims in good faith and cannot impermissibly modify or rescind authorizations. As repeat players in this industry, Defendants knew that Plaintiffs would interpret their communications regarding insurance coverage and authorizations considering the regulations that circumscribe Defendants conduct and Plaintiffs reasonably believed that Defendants would act in accordance with the law. Defendants' subsequent failure to abide by their statutory and regulatory duties support the imposition of promissory estoppel.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

FIRST AMENDED COMPLAINT

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

**THIRD CLAIM FOR RELIEF**

**UNFAIR BUSINESS PRACTICES**

**(Against Blue Shield Defendants)**

130.   Plaintiffs repeat the allegations contained in each of the preceding paragraphs of this Complaint.

131.   California's Unfair Competition Law ("UCL"), Bus. Prof. Code Sec. 17200 *et seq.*, prohibits unlawful, unfair, and fraudulent business practices. Defendants' conduct violates all three of these prongs.

132.   Defendants unfair and fraudulent scheme was clear. They intended to sell the subject policies and pocket the premiums, sit back as their insureds sought medically necessary behavioral health treatment, confirm to Plaintiffs that the subject patient-insureds were covered, and then, on unspecified and/or technical grounds and in direct contravention of their prior statements to Plaintiffs, and their statutory and regulatory duties, refuse to fully compensate Plaintiffs for the services that were rendered to, and benefitted Defendants' patient-insureds.

133.   Defendants were and are enriched by keeping premiums without having to pay for care. Defendants further benefited by satisfying their customers, as the Former Patients received the needed care. Defendants' practices were unfair and deceptive to Plaintiffs (as those practices would be to any reasonable consumer), who were induced by Defendants misleading statements to treat the Former Patients and misled into believing that they would be paid fairly for rendering those expert services. *Cf. Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) ("A fraudulent business practice is one in which members of the public are likely to be deceived").

134.   The harm caused by Defendants is substantial and is not outweighed by any countervailing benefits to consumers or society. To the contrary, as discussed, Defendants conduct severely impacts vulnerable members of society and the healthcare providers attempting to remedy the scourge of substance abuse and addiction.

24

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

135.   The unfairness of Defendants conduct is underscored by its effect on policyholders and patients, who were also fraudulently misled into believing that under Defendants' policies they could choose, and Defendants would pay for, care supplied by providers such as Plaintiffs, when in fact Defendants intended to illegally underpay treatment centers throughout California. The policies Defendants sold were worth far less than what a reasonable person buying the policy would have believed. And these individuals are some of the most vulnerable in society, with few options available for treatment of their disease.

136.   Defendants' practices are also unlawful in that they violate the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"). The MHPAEA is an antidiscrimination statute intended to ensure that coverage of mental health and substance abuse care (such as that which Plaintiffs provide) is in "parity" with coverage of medical and surgical care.

137.   The MHPAEA and its implementing regulations make clear that any "financial requirements" or "treatment limitations" an insurer applies to mental health or substance abuse policy benefits must be no more restrictive than the financial requirements or treatment limitations applied to medical and surgical policy benefits.

138.   Treatment limitations can be "quantitative" or "non-quantitative." Quantitative treatment limitations are expressed numerically (e.g., frequency of treatment, number of visits, days of coverage, days in a waiting period); non-quantitative treatment limitations limit the scope or duration of benefits for treatment.

139.   Absent a clinically appropriate justification, an insurer may not impose a nonquantitative treatment limitation on mental health or substance abuse benefits unless, under the terms of the plan as written and in operation, the factors used in applying the non-quantitative treatment limitation to mental health or substance use disorder benefits are comparable to, and are applied no more stringently than, the factors used in applying the limitation with respect to medical/surgical benefits in the same classification.

FIRST AMENDED COMPLAINT

140.   The relevant regulations make clear that reimbursement behavior, including without limitation the rates and the methods for determining usual, customary, and reasonable charges, are non-quantitative limitations governed by MHPAEA.

141.   Upon information and belief, Defendants treated Plaintiffs (and providers of substance abuse treatment like Plaintiffs) differently than providers offering medical and surgical services. Defendants have brazenly disregarded claims regulations and underpaid or delayed paying claims based on the application of standards and conditions that Plaintiffs are informed and believe do not apply to medical and surgical claims.

142.   As a remedy for their unlawful, unfair, and fraudulent practices, Defendants should be ordered to pay restitution, and for all claims Plaintiffs may present in the future, as well as for any pending claims, to the degree such relief is appropriate, Defendants should also be ordered to: inform Plaintiffs, promptly and in writing, whether the claim is approved, partially approved, or denied; inform Plaintiffs, promptly and in writing, of the particular contractual provision upon which any denial or partial denial of a claim is based; inform Plaintiffs of the mathematical basis upon which it has calculated the amount it has proposed to reimburse Plaintiffs, if that reimbursement is less than 100% of the submitted charge; promptly provide Plaintiffs with a complete copy of the operative policy from which any provision has been cited as justification for the denial, in whole or in part, of a submitted claim; and otherwise strictly follow all governing state law concerning the handling of claims.

## FOURTH CLAIM FOR RELIEF
## BAD FAITH INSURANCE DENIAL
### (Against Blue Shield Defendants)

143.   Plaintiffs repeat the allegations contained in each of the preceding paragraphs of this Complaint.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

144. "[T]he law implies in every contract a covenant of good faith and fair dealing," which "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979).

145. Plaintiffs, by assignment or operation of law, stand in the shoes of these 36 Former Patients, who were all insured under a policy of insurance issued by Defendants.

146. For each of the 36 Former Patients, Plaintiff asserted a valid claim for the payment of benefits covered by the subject insurance policy under which a particular Former Patient was treated.

147. Defendants failed to deal fairly and in good faith with Plaintiffs with respect to these 36 Former Patients by unreasonably failing to investigate the claims, by unreasonably failing to pay the claims, by unreasonably failing to pay the claims in full, or by unreasonably paying the claims for a significantly reduced and unjustified rate.

148. Defendants' failure to deal fairly and in good faith caused Plaintiffs to suffer damages.

149. Defendants' bad faith was a deliberate part of a larger scheme to not pay providers, like Plaintiffs, who treat recovering drug addicts.

150. Plaintiffs are entitled to compensatory damages as allowed by law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against the Defendants, and that the Court award the following relief:

1)  A judgment declaring Defendants conduct unlawful;

2)  An award of equitable relief as necessary to stop Defendant's pattern of unlawful, unfair and deceptive conduct;

3)  Award damages, in an amount to be proven at trial, plus all applicable interest and costs;

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

FIRST AMENDED COMPLAINT

1    4)    Award all attorney's fees and costs incurred in bringing this action, to the

2    extent recoverable by law; and

3    5)    Issue all other relief the Court deems appropriate, proper, and just.

4

5    Dated:  February 4, 2022              **KANTOR & KANTOR, LLP**

6

7                                         By:   /s/ *Timothy J. Rozelle*
                                                Timothy J. Rozelle
8                                               Attorneys for Plaintiffs
                                                Dual Diagnosis Treatment Center, Inc.
9                                               d/b/a Sovereign Health of California
                                                ("Dual Diagnosis"); Shreya Health of
10                                              California, Inc. ("Shreya"); Medical
                                                Concierge, Inc. d/b/a Medlink
11                                              ("Medlink"); Satya Health of
                                                California, Inc. ("Satya"); Sovereign
12                                              Health of Phoenix, Inc.; Shreya Health
                                                of Arizona, Inc.; and Vedanta
13                                              Laboratories, Inc. ("Vedanta")

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

28

FIRST AMENDED COMPLAINT

## <u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby demand a trial by jury.

Dated:  February 4, 2022

**KANTOR & KANTOR, LLP**

By:     <u>/s/ *Timothy J. Rozelle*</u>
         Timothy J. Rozelle
         Attorneys for Plaintiffs
         Dual Diagnosis Treatment Center, Inc.
         d/b/a Sovereign Health of California
         ("Dual Diagnosis"); Shreya Health of
         California, Inc. ("Shreya"); Medical
         Concierge, Inc. d/b/a Medlink
         ("Medlink"); Satya Health of
         California, Inc. ("Satya"); Sovereign
         Health of Phoenix, Inc.; Shreya Health
         of Arizona, Inc.; and Vedanta
         Laboratories, Inc. ("Vedanta")

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

29

FIRST AMENDED COMPLAINT